U.S. COURT ...
... CIRCUIT

2023 AUG -4 AM 11: 13

| United States Court of Appeals for the Tenth Circuit<br>Address:1823 Stout Street, Denver, CO 80257 | |
| Appellant:    David William Dacres Shaver<br>Vs. Appellee(s):    Whittier HOA [Whittier Place<br>Condominiums Homeowners Association, Incorporated]+ | Δ COURT USE ONLY |
| 'Pro Se'Party/Not member of Colorado Bar:<br>David William Dacres Shaver<br>1750 30th St Suite A338, Boulder CO 80301<br>Phone: 303-351-4239  eMail:davidshaver@yahoo.com | Case Number:<br><br>**23-1197** |

## APPEAL BRIEF

| TABLE OF CONTENTS | PAGE |
|---|---|
| TABLE OF AUTHORITIES | 2 |
| JURISDICTIONAL STATEMENT | 3 |
| STATEMENT OF ISSUES PRESENTED FOR REVIEW | 3 |
| STATEMENT OF THE CASE | 4 |
| SUMMARY OF THE ARGUMENT | 5 |
|   A. Dismissal of the Complaint | 5 |
|   B. Security of Submitted Evidence | 5 |
|   C. Failure/Refusal of Defendants to Participate | 5 |
|   D. Failure to Consider Related Cases | 5 |
|   E. Recusal of the Judge | 6 |
| ARGUMENT | 6 |
|   I. Unjustified Dismissal of the Complaint | 6 |
|   II. Inadequate Protection of Submitted Evidence | 13 |
|   III. Defendants' Non-Participation nor compliance w/Implied Contract | 14 |
|   IV. Incorporation of Outstanding Issues from Interrelated Cases+ | 17 |

   V. Bias or Lack of Impartiality in Judicial Proceedings / Recusal ..............20

CONCLUDING TEXT ...................................................................21

PRAYER FOR RELIEF ................................................................22

CERTIFICATE OF COMPLIANCE .................................................25

CERTIFICATE OF SERVICE .......................................................25

MOTION TO SUPPLEMENT THE RECORD ...................................26

## TABLE OF AUTHORITIES

### CASES

Grable v. Darue, 545 U.S. 308 (2005) ...............................................7

Gunn v. Minton, 568 U.S. 251 (2013) ...............................................7

Bell v. Hood, 327 U.S. 678 (1946)....................................................8

Monell v. Department of Social Services, 436 U.S. 658 (1978) ...............8

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).............................8

Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) ...................................9

Swift v. Tyson :: 41 U.S. 1 (1842)..................................................9

Rio Properties, Inc. v. Rio International Interlink (2002) ..................15

FTC v. PCCare247 Inc. (2013)......................................................16

Berezovsky v. Abramovich (2012) ..................................................16

Mullane v. Cent. Hanover Bank & Trust Co (1950) ..........................16

Markham v. Allen, 326 U.S. 490 (1946) ..........................................18

### STATUTES

Judiciary Act of 1875 ..................................................................12

Civil Rights Act, Title VI, 42 U.S.C. § 2000d et seq. (1964)..............5,27

Section 35 of the Judiciary Act of 1789, 1 Stat. 73 ...........................18

## OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 8(a)(1) ..................................................12

## CONSTITUTIONAL:

4th, 5th, and 14th amendment violations............................................................10

## JURISDICTIONAL STATEMENT

A Primary goal of this appeal is to contest the lower court's 'Subject Matter Jurisdiction' findings; as such, defenses thereof are intended to be presented herein (reference: contents of 'Argument I'). A 'Notice of Appeal' was filed 6/7, within time limits from the final judgement of 3/9. Statutory basis: 28 U.S.C. § 1291, and 1294 indicate that this Court has jurisdiction over its decisions. This Appeal is from a 'Final Order' or Judgement which indicates it disposes of all parties claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Appellant presents 5 primary issues, each w/contributing subfactors to consider:

**I. Did the District Court err in Dismissing Appellant's Complaint, Claimed as ~Being Due to Lack of Subject Matter Jurisdiction?**

A. Did the court misapply jurisdictional requirements?

B. Did the court overlook other sources of subject matter jurisdiction?

**II. Did the Judge Provide Submitted Evidence With Sufficient Security?**

A. Did the court adequately address the protection of evidence?

B. Were implications of not suppressing or sealing certain evidence considered?

**III. Were Defendants Mistaken to Refuse to Answer or Participate?**

A. Did the court properly address the issue of Defendants' noncompliance?

B. Were the alternative methods of service used properly considered?

**IV. Were Outstanding Issues From Interrelated Cases Incorporated, and**

## Were there any Inconsistent Judicial Approaches?

A. Did the court evaluate implications of related cases on the current matter?

B. Were Outstanding Issues Considered for a Comprehensive Adjudication?

## V. Should the Assigned Judge have Recused Herself?

A. Did the Court evaluate all potential biases & their impact on proceedings?

B. Were Appellant's concerns regarding Judicial impartiality fully considered?

**[Citation Convention: Appellant uses 'ΔDoc' to refer to District Court Documents #'s, also reflected in the ROA, to the extent transmitted so far]**

## Statement of the Case

The theory of the case centers on what Appellant considers the unjustified dismissal of the complaint by the District Court Judge on jurisdictional grounds [ΔDoc 16#P2¶¶2, ΔDoc 24, ΔDoc 31:4, ΔDoc 31:12, etc], which Appellant has contended was contrary to established precedents, such as those affirming federal court jurisdiction over expressed claims of federal rights violations (Reference: [ΔDoc 1,Attachment 1(VI)]). The dismissal has effectively led to predicted denial of due process [ΔDoc 31:2] and since the lower court's dismissal, has resulted in significant property loss. Additionally, Appellant had raised concerns about the handling of sensitive documents [ΔDoc 32:B] after his supplied motion [ΔDoc 2] wasn't passed (and documents were left insufficiently protected [ΔDoc 3,4,5,6,7], or apparently not protected at all [ΔDoc 32: Attachment 2,3]), and the adequacy of the supplied summons [ΔDoc 24:VI(a)] contributing to Defendant's noncompliance with electronic service precedents, or what was effectively an implied contract to participate [Exhibit_L, eMail of 3/22/23], and the Judge's apparent unwillingness to compel them to do so, further raising concerns about the integrity of

the proceedings. Moreover, Appellant pointed out the insufficiency of attention that had been supplied to related contributory cases in Boulder Metro [C#:G176765], Jefferson County [Case#21C415+], and Denver Probate [Case#2021PR30635] despite requests, the further pursuit of some of which had been interrupted by the fire. Despite Appellant's advance requests to cure the gender bias shown by all prior Judges in contributory cases which were heard having been female [ΔDoc 24:VII(b)], and later even demonstrations that these requests were in line with the Civil Rights Act [ΔDoc 32:D(4)], the Judge refused to acknowledge any bias or otherwise recuse.

## Summary of the Argument

A. <u>Dismissal of the Complaint:</u>

Appellant believes that the District Court Judge's dismissal on jurisdictional grounds was erroneous and went against established precedents, resulting in an effective denial of due process, as well as significant property loss.

B. <u>Security of Submitted Evidence:</u>

Appellant raises concerns about the handling of sensitive documents and the adequacy of the supplied summons, which may have implications for the preservation of submitted evidence and adherence to established procedures.

C. <u>Failure/Refusal of Defendants to Participate:</u>

Appellant emphasizes the Defendant's lack of participation and noncompliance with the provided notice and an implied contract, as evidenced by their failure to respond and provide information despite clear communication.

D. <u>Failure to Consider Related Cases:</u>

Appellant points out the insufficiency of attention that's been supplied to relat-

ed contributory cases in Boulder Metro, Jefferson County, and Denver Probate, despite requests, the pursuit of some of which were interrupted by the fire.

## E. Recusal of the Judge

Appellant raises concerns about the District Court Judge's refusal to recuse despite Appellant's advance request and the presence of obvious gender bias and other inferable biases. Impartiality is essential to uphold the integrity of the judicial proceedings and ensure a fair trial.

## In Conclusion of the 'Statement of the Case' and 'Summary of the Argument':

The theory of the case centers on the unjustified dismissal on claimed jurisdictional grounds and the subsequent denial of due process and property loss. Appellant intends to present a coherent perspective supported by various points that highlight potential flaws in the lower court's handling of the case. Overall, this appeal seeks to cover the majority of appealable points raised in [ΔDoc 32(D)], the others appearing inferrable hereby. The appeal seeks a just resolution and requests the Appellate Court's thorough reevaluation of the District Court case filings and associated cases. Appellant believes that the District Court's dismissal of his complaint and the subsequent actions of the Defendant and the City have resulted in a denial of due process and significant property loss. The appeal aims to have the Appellate Court review all arguments + the case 'de-novo' ®.

## Argument

## I) **Dismissal of the Complaint (Primarily on Jurisdictional Grounds):** ®

### A. Did the court misapply jurisdictional requirements?

Appellant's cause of action, shown in the 'Civil Cover Sheet,' clearly states 'violations of 42 U.S.C. 1983' [ΔDoc 1,A1(VI)], a federal statute that provides

recourse for deprivation of constitutional rights under color of state law. Despite this, the Lower Court Judge claimed that she could not find Appellant's cause of action [ΔDoc 16#P2¶¶2], and gave no indication of having examined pertinent related casework (such as public domain police body camera footage or filings in Boulder Municipal which both referenced constitutional amendment violations and/or related supreme court precedent) as requested either, which further clearly evidenced 'dispute' under {Grable/Gunn}. Before the entirety of Appellant's original filings had even been made available, the Judge also requested [ΔDoc 16] Appellant to spend three weeks researching a document showing sources of jurisdiction [ΔDoc 24]. Appellant theorises that the District Court Judge may have insufficiently evaluated, and erroneously dismissed the complaint on jurisdictional grounds, contrary to established precedents, including those affirming federal court jurisdiction over claims of federal rights violation.

The District Court Judge's objections against Appellant's filings generally appear unfounded, refuted by subsequent filings, supplied precedents, multiple independent analyses, inference, and the ongoing actions of the Defendant and the City. These actions have further led to the destruction of Appellant's properties since the District Court Case dismissal. The Judge's requests appear to have turned out to be demonstrably logically unreasonable, and the failure to offer any reasonable alternatives in her responses, coupled with the Defendant's subsequent actions, equates to an overall denial of due process [ΔDoc 31:2], infringing upon the rights Appellant is supposed to have under the U.S. Constitution. Moreover, it also effectively resulted in a failure to 'provide an opportunity for a pre-seizure hearing for property', supposedly guaranteed by U.S. Supreme Court precedent

[ΔDoc 31:12].

The District Court, despite Appellant's jurisdictional stance being grounded in established precedent and supported by multiple analyses (as most clearly outlined in Appellant's [ΔDoc 25+Doc 32(A)]), issued multiple orders challenging this position. The presiding Judge dismissed Appellant's complaint, primarily citing jurisdictional concerns. This dismissal also contradicts the precedent set by {Bell v. Hood, 327 U.S. 678 (1946)}, which asserts that federal courts have jurisdiction over claims alleging violation of federal rights, irrespective of whether a well-pled complaint is presented. The Judge further expressed apparent confusion over the police involvement, or the Defendant's collusion with them [ΔDoc 1:6(F)&(D), Exhibit_L(email of 11/10/21:'XN398983')] qualifying as acting under 'color of state law.'[ΔDoc 27:p9,II(C)]. However, as highlighted in Appellant's Brief [ΔDoc 31(4)*], this should be clear given that 18 U.S.C. 242 'deprivation of rights' typically establishes such a condition. Moreover, one of the precedents cited therein, {Monell v. Department of Social Services, 436 U.S. 658 (1978)}*, explicitly states that local governments can be sued under Section 1983 for monetary, declaratory, and injunctive relief when their officials violate federal law, and {Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)} indicates that private parties can be held liable for their collusion therein. Due to that Court's failure to support enjoining destruction of the property [ΔDoc 1:E,ΔDoc 10,ΔDoc 31:6,'APPLICA-TION',etc], the absence of due process and a preliminary injunction clearly have jeopardised Appellant's rights, resulting in property damage.

The Judge also seemed to take issue with Colorado's JDF 116 form, which combines an affidavit with a legal complaint for the recovery of replevin posses-

sions. This is suggested by the Judge issuing an 'Order to Show Cause' directed at Appellant, rather than the requested 'Order to Show Cause' listed as the initial request on the Colorado standard complaint. However, according to the Erie Doctrine[1] (established in {Erie R. Co. v. Tompkins}), state legal procedures should be applied when aspects of a case potentially involve Defendants from other states or countries and require resolution at the time of filing in Colorado. Therefore, the Judge should not have objected to the use of Colorado's standard resolution for replevin actions as expressed in JDF 116. If the Erie Doctrine does not apply, then the fallback evaluation should apparently be conducted via {Swift v. Tyson}, which suggests that if state law, as developed by Colorado's Legislature, is inadequate to evaluate the case, Federal common law should be invoked, again indicating Federal jurisdiction to be appropriate. Rather than apply 'Artful pleading' doctrine logically herself, she seemed to be insisting that the case should instead be required to be brought in a Colorado State Court instead, where it would be required to be evaluated in that manner, then sent back to Federal Court.

From Appellant's perspective, the vast majority of the District Court Judge's jurisdictional objections against his filings appear to be unfounded or illogical under the circumstances and arguably further refuted by subsequent filings, supplied precedents, and the ongoing actions of the Defendant and the City, which, even after Appellant's clear declarations that he was going to appeal, have resulted in the destruction of Appellant's properties. The Judge's failure to offer reason-

[1]**For Reference "A Critical Guide to Erie Railroad Co. v. Tompkins", William & Mary Law Review, pp921-986 Volume 54, February 2013**

able alternatives in her responses, combined with the Defendant's subsequent actions, amounted to a denial of due process, again infringing upon Appellant's rights which are supposed to be guaranteed by the U.S. Constitution. These denial led to the destruction of Appellant's property, resulting in potential direct damages exceeding seven figures [Calculable by the stock quantities and prices displayed in Exhibit J and Exhibit K alone, notwithstanding confidential evidence yet to be filed due to the failure to pass Appellant's 'Motion for Suppressing or Sealing' [ΔDoc 2]. The one jurisdictional objection that Appellant and his advisors think has the most support is her representation that Defendant would have to explicitly invoke the 'Declaratory Judgment Act' [ΔDoc 27:p10(F)], which Appellant intends to do here as part of the preferred relief.

B. <u>Did the court overlook other sources of subject matter jurisdiction?</u>

Appellant contends that the Judge's arguments exhibit numerous inaccuracies and contradictions, raising questions about that Court's interpretation and its potential lack of support for the U.S. Judicial system. Appellant recommends a review of his earlier response to the Federal Jurisdiction [ΔDoc 24] at this point, which should provide further jurisdictional grounds which independent analyses indicated should have been more than sufficient. Further the analyses of <u>4th, 5th, and 14th amendment violations</u> in [ΔDoc 31].

Amongst the most glaring of the apparent errors in her analyses:

(a) The Judge's incorrect claim that Appellant's arguments in jurisdictional defense were 'exhaustive' [ΔDoc 27:p13], when there are multiple arguments that were intentionally left out due to lesser applicability, or obvious inferrability (For an example, obvious implications of the 'Colorado River Doctrine' <u>{Colorado</u>

<u>River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)</u>} which would appear to preclude separate simultaneous state and federal pursuits of these matters).

(b) In further evidence that she apparently did not do a very thorough job of analysis of or even reading Appellant's filings, in her order of 4.12, the Judge refers to the Amended motion [ΔDoc 19:Motion GAMMA] filed on 3/15 as 'the "Motion for Joinder"', when this was actually an emendation of only 1 of 4 of the motions originally filed.  She goes on to claim [ΔDoc 27:p5] that I do not mention any of the "Sherman Act, the Clayton Act, the Defend Trade Secrets Act (DTSA), and the Digital Millennium Copyright Act (DMCA)", when they were clearly mentioned in the memoranda of [ΔDoc 12:Motion ALPHA].  Apparently she never even read some of Appellant's case filings before issuing her original Order.

(c) She then goes on to demand that Appellant add Defendants to the case for damages that hadn't even occurred yet [ΔDoc 27:p5,p14], though only appearing to acknowledge the minority of Defendants on the one amended motion, when by clear provided precedent, in line with the concept of 'joint and several liability', the named Defendant reportedly <u>can</u> be held accountable, and should be allowed to join further Defendants themselves if necessary to distribute liability [ΔDoc 31:4].  This appears to Appellant to be further inconsistent, contradictory, and not in line with established legal principles : even potentially amounting to an effective abdication of judicial responsibility, given that Appellant had provided Permissive Joinders for many conceivably necessary defendants at her discretion.

(d) Further, she even claims that 'Plaintiff has not alleged Defendant's principal place of business or state of incorporation', and yet this is clearly shown in [ΔDoc

20].  She goes on to complain that he also hadn't identified their members, when Defendant's obstructions in providing information were already reported. Appellant's 'Entry of Appearance' to this case lists what is provided on the 'BoulderHOA' web site (and [Exhibit L], which she was provided, contains emails to them also).  Appellant further believes that Court Rules should allow for Judges to proactively examine such official state public records themselves.

(e) Finally, she remarks upon Appellant's self representation in the case without noting that this was originally the requirement in Replevin actions (despite having been explicitly referred to the researched origins of that in Appellant's jurisdictional defense).

As Appellant has observed [ΔExhibit_L:ChatLogs:PhoneImg:Img_0067], property owners have a distinctly different risk/reward ratio for the recovery of their own property than official responders.  Appellant believes that, contrary to the Judge's opinion that this case doesn't present an important enough question, this hilights the importance of deciding this case in ways potentially beneficially affecting numerous similar cases (which Appellant feels should include such as the recently reported incidents affecting 'Robb Elementary', where parents weren't allowed to gauge the risk/reward for themselves in exercising their rights in defending their own children).

In her 21 pages of initial 'Orders' questioning Jurisdiction [ΔDoc 16, ΔDoc 27], largely in an apparent attempt to define what <u>FRCP's definition in Rule 8(a)(1)</u> "a short and plain statement of the grounds for the court's jurisdiction" actually means, the Judge also somehow failed to cite actual law underpinning the 'well-pleaded complaint rule,' and in the process appears to have disregarded

Congressional intent in the reputed origins : 'The Judiciary Act of 1875' (instead referencing precedents which do not seem to bear significant relevance or resemblance to the current case).

In conclusion, the dismissal of the complaint was primarily based on jurisdictional grounds, which dismissal Appellant believes was unfounded.

## II) Ensuring the Integrity of Submitted Evidence: ®

### A. Did the court adequately address the protection of evidence?

The handling and protection of submitted evidence in this case have raised significant concerns. The District Court's Judge expressed dissatisfaction due to the absence of certain evidence that Appellant was unable to submit because the Judge did not approve a motion to suppress or seal. This situation underscores a lapse in the management and safeguarding of critical evidence.

Moreover, it appears that the Judge left the evidence that Appellant had already provided unprotected, thereby creating potential vulnerabilities. This situation casts doubt on the integrity and safeguarding of the evidence, which should generally be managed with the highest level of care and security.

When Appellant later supplied certain exhibits in heavily redacted form, they weren't even given the limited security that original filings had been given, despite having been marked as intended to be sealed or suppressed.

It is worth noting that Appellant's motion for the suppression or sealing of evidence was modelled after filings in other federal courts that encountered no difficulties in their passage [Case#4:22-cv-01110, Doc 67], which demonstrates its reasonableness. This fact indicates that similar requests for the protection of evidence have been accepted in other jurisdictions, thereby emphasising the impor-

tance and reasonableness of Appellant's motion in this case.

B. <u>Were implications of not suppressing or sealing evidence considered?</u>

The Judge's refusal to pass Appellant's motion appears contrary to the obvious importance of maintaining the security and integrity of evidence in ensuring a fair and just legal process.  Specific evidence that was left exposed included Exhibit J (in obvious violation of its confidentiality agreement), plus legal communications considered 'Attorney Client Privilege', and later filings clearly marked intended sealed or suppressed.  The judge indicated that she could "raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" ~at her discretion [ΔDoc 16p3(I)], which should have allowed her to consider the security motions first, and yet she chose to do so before providing the requested protections for either the filings or the property.  To ensure a fair and equitable resolution of this matter, it is crucial, from Appellant's perspective, that this Court conduct a thorough assessment of the security measures employed in handling the submitted evidence. This Court should also consider the potential consequences of any mishandling or exposure of evidence, as this could undermine the integrity of the proceedings and compromise Appellant's ability to present a robust case.

In conclusion, from Appellant's perspective, the handling of the submitted evidence in this case has raised significant concerns that should to be addressed to ensure a fair and equitable resolution of this matter.

## III) <u>Defendants' Non-Participation Despite Notice & Implied Contract to Respond:</u> ®

A. <u>Did the court properly address the issue of Defendants' noncompliance?</u>

The issue of non-participation by the defendants, despite being served notice

and emailing back an effective implied contract to respond, is a significant concern in this case. The Defendant(s) were served notice via email; Reference: [Exhibit_L,eMail of 3/22/23, 2:34 PM : sleff@wlpplaw.com] wherein she responded "The Association does not intend to sign off on a waiver of service unless and until the documents are completed and presented in the manner provided under the court rules" and/or LinkedIn, and a pre-emptive 'Notice of Claim' was further even provided for the City [See Also Exhibit L : Corvel Response]. Despite these efforts, the defendants failed to answer or engage in the proceedings, the Judge did not encourage their participation, and the City proceeded to approve demolition.

B. Were the alternative methods of service used properly considered?

Although Appellant's original notice to Defendants provided them with several precedents indicating that electronic service of process should be sufficient [ΔDoc 25][Referencing Jeffco Case#21C417, Memorandum of 6.3.2021], and yet after the response implying they would waive above, did not respond to either electronic or USPS mailed deliveries of such (or a even a later query of 4/8 as to whether they thought that documents had been "completed and presented" properly, which can be supplied upon request), in this context of electronic service and potential evasion by defendants, these additional cases also appear most pertinent:

a) Rio Properties, Inc. v. Rio International Interlink (2002): The 9th Circuit Court of Appeals permitted service of process via email when the defendant, an internet company, intentionally concealed its physical location, making traditional service methods impracticable. The court ruled that under these circumstances, email service was reasonably calculated to notify the defendant of

Page 15

the proceedings.

b) <u>FTC v. PCCare247 Inc.</u> (2013): The Southern District of New York allowed service of process via email and Facebook. The court found that the defendants, based in India, actively avoided traditional service methods. Therefore, service via email and Facebook was deemed reasonably calculated to notify them.

c) <u>Berezovsky v. Abramovich</u> (2012): An English court permitted service of process via a private message on a social media platform, finding that this method was likely to bring the proceedings to the defendant's attention.

d) As also quoted in the case filing referenced in [ΔDoc 25][Referencing Jeffco Case#21C417, Memorandum of 6.3.2021], notice was in accordance with the precedent set by {<u>Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)</u>}, being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections [and] reasonably structured to assure that the [entity] to whom it is directed receives it".

These cases suggest that when traditional service methods are impracticable, especially when a defendant actively avoids service, courts should be open to alternative service methods, including electronic ones.

Rather than indicating that she made a good faith attempt to review the electronic service precedents [ΔDoc 25][Referencing Jeffco Case#21C417, Memorandum of 6.3.2021], or providing any evaluation thereby, or encourage Defendants' appearance, the District Court Judge claimed "it is not clear that the Defendant has been properly served or has waived service at this juncture" [ΔDoc

Page 16

27:p9]

Conclusion: In light of the Defendants' continued noncompliance and their avoidance of traditional service methods, we respectfully request that this Honorable Appellate Court should carefully consider the Defendants' non-partici-pation, Appellant's earnest attempts to provide notice, and the potential need for default judgment as part of the relief sought in this appeal. The pursuit of justice and the protection of constitutional rights demand that the court take appropriate action to address the Defendants' failure to participate in these proceedings.

## IV) Incorporation of Outstanding Issues from Interrelated Cases and Addressing Inconsistent Judicial Approaches ®

A. Did the court evaluate implications of related cases on the current matter?

The District Court's failure to consider related cases and its inconsistent approach to jurisdictional matters is a significant concern in this appeal. Specifically, the condominium at 2301 Pearl #39, previously owned by Appellant's late father, Marvin D. Shaver, became a focal point of contention. Upon his passing in November 2021, the property was integrated into a trust, with Appellant designated as a beneficiary.

B. Were Outstanding Issues Considered for a Comprehensive Adjudication?

Complications arose posthumously, leading Appellant to attempt to consolidate the family residence into his trust share. However, disputes and legal entangle-ments involving multiple jurisdictions, including Jefferson County and Denver Probate, further complicated matters. Notably, Appellant faced challenges such as:

a) The requirement to appeal a JeffCo County case to Jeffco District, which was then dismissed on the grounds that Appellant was representing his own whol-

ly-owned company* in a higher court, even though he had not chosen to bring it there, and the lower court's dismissal on similar 'subject matter jurisdiction' claims was highly questionable.

b) A stark contrast, even contradiction, between Jeffco District's refusal to allow Appellant's representation of his company and the Probate Court's de facto assertion of jurisdiction over his company's assets, without even joining his company in the Probate case.

c) A forced order to relocate personal property from a secure storage facility to a less secure condominium in Boulder.

d) The interference by the fire at Whittier Condominiums with Appellant's intentions to appeal those cases (or refile in Federal court), which somehow occurred on the 19th of the month (which the original and subsequent numerous JeffCo and DNPC filing dates had been aligned with), ultimately destroying said property. In his final filing in his Jeffco District appeal (which was not heard) case #21CV137 (9/21/2021), Appellant provided the case precedent {MARKHAM v. ALLEN 326 U.S. 490 (1946)} (which had also been posted on the storage unit door), which supports federal jurisdiction in such cases which may not necessarily "assume general jurisdiction of the probate or control of the property.".

*Further, Section 35 of the Judiciary Act of 1789 also clearly states that parties may manage their causes personally or with counsel's assistance. Appellant believes that the refusal to ultimately allow corporate self-representation in the

*An analysis titled "The Corporate Pro Se Litigant" by Suneal Bedi of Indiana University is available, whose arguments in favor of corporate self-representation Appellant finds compelling:
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3550886

JeffCo case is unfair, given the compelling arguments put forth by legal scholars and the principles of self-representation embedded in the law.

Appellant, therefore, respectfully requests this Court's assistance to provide for the effective incorporation of the appeal of outstanding issues from the Jefferson County (JeffCo) and Denver Probate cases, which were unfortunately interrupted by the fire at the Whittier Place Condominium complex. These related cases are intrinsically connected to the present appeal and share common factual and legal issues. Incorporating the unresolved matters from these cases will enable a comprehensive and efficient adjudication of all relevant claims and ensure a just and complete resolution.

The interruption caused by the fire and subsequent events severely impacted the progress of the Jeffco and Denver Probate cases, making it impractical to pursue them separately. Combining the unresolved issues from these cases with the present appeal will promote judicial economy and avoid unnecessary duplication of efforts. It will also prevent the risk of inconsistent outcomes and ensure that all related claims are adjudicated in a cohesive manner.

Moreover, allowing the incorporation of outstanding issues (via supplied Causes on the supplied FRCP 20 Joinder motions) from the Jeffco and Denver Probate cases aligns with the interests of justice and fairness. Such would enable the Court to consider the entire context of Appellant's legal disputes and provide a comprehensive resolution that takes into account the cumulative impact of all relevant events.

Incorporating the unresolved matters from these related cases into the present appeal is essential for a complete and thorough adjudication of Appellant's claims.

Appellant believes that such incorporation would facilitate a just and efficient resolution and respectfully requests this Court's approval to proceed accordingly.

In conclusion, the oversight of related cases and the inconsistent judicial approach have significantly impacted Appellant's pursuit of justice. It is imperative for the appellate court to consider these inconsistencies and their implications for the case's fair adjudication. The incorporation of outstanding issues from the Jefferson County and Denver Probate cases is vital to ensure a comprehensive and just resolution of all relevant claims.

## V) **Bias or Lack of Impartiality in Judicial Proceedings / Recusal:** ®

A. Evaluation of Potential Biases and Their Impact on Proceedings:

Appellant hereby supplies an Affidavit for Recusal outlining multiple sources of potential bias, some of which Appellant provided notice of up front before Judicial assignment, and further that he believes are reasonably inferable from the public record of Judge Nina Y. Wang.

B. Consideration of Appellant's Concerns Regarding Judicial Impartiality:

In conclusion, Appellant emphasises the importance of a fair and unbiased judicial process in this case. It is essential that all potential biases, whether gender-related or arising from other aspects of Judge Wang's background, be fully evaluated to ensure an impartial hearing, and believes that the information presented in the Affidavit for Recusal (p27) and the additional details in both sections underscore the need for a fair and impartial judicial process. To uphold the integrity of these proceedings, he recommends the recusal of Judge Nina Y. Wang from this case.

Page 20

## Concluding Text

This appeal arose from a complex of legal disputes surrounding a fire at the Whittier Place Condominium complex in Boulder, Colorado, and its aftermath. Appellant sought to rectify any errors and oversights made in the District Court, which may have resulted in the dismissal of the case.

Section I of the appeal focuses on the jurisdictional issue. Appellant contended that the District Court Judge erroneously dismissed the complaint on jurisdictional grounds, despite established precedents including affirming federal court jurisdiction over claims of federal rights violation. Appellant maintained that the case involves significant federal issues that should warrant federal court adjudication.

Section II addressed the integrity of the supported evidence and Appellant's motion to suppress/seal sensitive documents. Appellant contended that the District Court Judge failed to properly consider the motion, despite successful precedent in federal courts for similar motions. The proper handling of sensitive documents is essential for a fair and just resolution of the case.

Section III highlighted Defendants' non-participation despite proper notice, raising concerns about the fair adjudication of the case. Appellant diligently pursued electronic service of process, citing relevant case law supporting such methods when traditional service is impracticable or when defendants actively avoid service.

Section IV addressed the District Court's failure to consider related cases and its inconsistent approach to jurisdictional matters. The integration of outstanding issues from the Jefferson County and Denver Probate cases, interrupted by the fire, is essential for a comprehensive and efficient adjudication of all relevant

Page 21

claims.

In Section V, Appellant raised concerns about the District Court Judge's impartiality and requested the Court's recusal if deemed appropriate.

In conclusion, Appellant seeks a just resolution that upholds constitutional rights, ensures the integrity of evidence, and protects sensitive documents. The Appellate Court's careful review and consideration of the arguments and authorities cited will promote the principles of justice, fairness, and the protection of individual rights under the Constitution. By addressing the jurisdictional issue, the Defendants' non-participation, the integrity of evidence, and the recusal concern, this Court can facilitate a just and comprehensive resolution of this complex legal dispute.

## Prayer for Relief

Appellant prays for, and seeks the following relief, God willing, which he believes will serve the interests of justice and ensure a fair resolution of this case:

1. **Default Judgment:** Considering that the intent of service has been met and supported by established precedent, Appellant requests this Court to assess whether a **'Default Judgment'** against the Defendants is appropriate. The Defendants' noncompliance and lack of participation despite notice warrant careful consideration, and such may be the appropriate remedy to ensure the case can be resolved.

Appellant takes issue with the District Court Judge's apparent suggestion that he should pursue recovery by moving back to Oregon instead of allowing pursuit in Federal Court. A sufficient award of damages would allow for such relocation, and Appellant seeks the Court's acknowledgment of the damages incurred.

2. **Reversal and Remand:** If damages collected from any judgment are less than originally requested amounts, Appellant requests the **reversal** of the District Court's dismissal and the **remand** of the case for further continuation of proceedings*. This remand should include the opportunity to amend the claims to address the damages caused by the Defendants' actions.

3. **Reimbursement** for costs in & of this appeal would be preferred by Appellant.

4. **Approval for Joinder of any Additional Defendants:** In the event of further continuance, Appellant requests the Court's approval [ΔDoc 1] for the FRCP 20 joinder [ΔDoc 12+] of any additional Defendants that may be properly joined due to the new circumstances.

6. **Appointment of Special Masters:** In the event of a continuation of the case*, Appellant prefers the **assignment of 'Special Masters'** in specific areas such as Logic, Real Estate, and Jurisdiction (and someone else with extensive Intellectual Property experience). This measure aims to address any potential challenges any Judge may face.

5. *__Recusal of the District Court Judge:__ Appellant moves for the recusal of the District Court Judge if it is deemed appropriate. The Judge's handling of the case, refusal to consider critical arguments, and apparent bias raise concerns about her suitability.  A much more experienced, male judge, would be preferred.

7. *Appellant seeks passage of the '**Motion for Judicial Review of Forum Clause of Exhibit J**' [ΔDoc 11] to enable interstate resolution of presented issues.

8. *Appellant requests the Court to consider granting a '**Declaratory Judgment**' **under 28 U.S.C. § 2201**, as illustrated in [ΔDoc 24, II(f), p4]. This judgment would extend jurisdiction to cover all appropriate eventualities in the case.

9. *Appellant would strongly prefer that this Court allow the incorporation of out-standing issues from the related Jefferson County (Jeffco) and Denver Probate cases, which were interrupted by the fire, as well as promoting actual considera-tion of filings and body camera footage from the Boulder Metro case, into any continuance of the present appeal. This would enable a more comprehensive adju-dication of all relevant claims and ensure a just and efficient resolution of Appellant's legal disputes.

10. **Motion for Suppressing or Sealing:** Appellant urges the passage of his **'Motion for Suppressing or Sealing'** [ΔDoc 2] regardless. This measure is gener-ally vital to protect any sensitive evidence and classified information, ensuring a fair and secure resolution.

Appellant firmly believes that the relief requested above is warranted to address the injustices he has faced and to ensure that the rights that he is suppsed to have under the U.S. Constitution are defended under the law.

## CERTIFICATE OF COMPLIANCE

■ I certify that the above brief plus the following **"MOTION TO SUPPLE-MENT THE RECORD"** complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains ~6800 words (with any additional attachments also being within FED. R. APP. P. 32(a)(7)(B)(i) limits). I also certify that the above brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced 'Times' font with serifs, using boldface, underlining, or italics...

## CERTIFICATE OF SERVICE

■ I hereby certify that a copy of this Appeal Brief and any attachments has also been served via having been posted by regular mail upon [Suzanne Leff, Attorney, WLPP Law, 8020 Shaffer Parkway, Suite 300, Littleton, CO 80127], as well as being served electronically via eMail upon both Suzanne M. Leff <sleff@wlpplaw.com> (current 'RegisteredAgent'), and Christine Mollenkopf <christine@boulderhoa.com> : Whittier HOA billing (located at the prior registered agent's address, ~ at the time of the fire), and further emailed to the DWS_vs_Whittier_HOA_+_notifier@x-in-g.com list which has been made available to any residents who express(ed) an interest in subscribing.

'Appellant' Signature: _David W Shaver_ /s/David W Shaver(PRO SE)  Date: _____

Address:  1750 30th St Suite A338, Boulder CO 80301     Phone: 303-351-4239

## MOTION TO SUPPLEMENT THE RECORD

Pursuant to Federal Rule of Appellate Procedure 10(e), Appellant, David William Dacres Shaver, hereby Moves that this Court should supplement the record on appeal as necessary with additional evidence and communications related to service. Appellate believes this evidence is critical to the understanding of the case. As Appellant thought he made clear to the Clerk in advance email communications of 6/11 thru 6/27/2023, Appellant believes that the record should be supplemented with the following items: All those allowable exhibits and attachments from the District Court record which may have been omitted (including Exhibit J, and Exhibit L, and Attachments to District Court Document 1 such as the Civil Cover Sheet). As mentioned "I would recommend that it is ensured that such things as the public record of the cases cited in my Federal complaint, such as the 'Boulder Municipal' case (particularly including the bodycam footage from that), are at hand and/or readily available to whatever judge is assigned to this case....".  Appellant is willing to supply this Court with assistance as necessary.

Appellant believes these items are relevant and necessary for a full and fair adjudication of the issues on appeal. They provide crucial context to the Defendants' actions and their decision to ignore the appeal process, which has resulted in the demolition of the property. Appellant is not certain why these items were not included in the original record after his requests.

**Wherefore,** Appellant respectfully requests this Court, God willing, should grant this motion to supplement the record on appeal with the aforementioned items.

'Appellant' Signature: _/s/David W Shaver (PRO SE)_  Date: _____

Address: _1750 30th St Suite A338, Boulder CO 80301_    Phone: 303-351-4239

# Affidavit for Recusal of Judge Nina Y. Wang

I, David William Dacres Shaver, the Appellant in the matter of this appeal, hereby submit this Affidavit in support of my request for the recusal of Judge Nina Y. Wang from presiding over this case. At the time of filing this case with the Federal District Court's Clerk, Appellant expressed a preference for a male judge who was not a magistrate due to gender bias experienced in having only female judges assigned the immediately previous ~three court cases explicitly referenced in this one, whose contributions to the current situation have been outlined in case filings.

Despite Appellant's request, Judge Nina Y. Wang, a female and very recently an appointed magistrate, was assigned to this case. Rather than heed his requests (which were later even shown to be in line with the intents of the Title VII of the Civil Rights Act), which had also come before she was even assigned, she appeared to Appellant to somehow take any suggestion that there might be any bias involved (and everyone has biases, in Appellant's experience) somehow personally.

Therefore, in subsequently performing more of a personal investigation, Appellant believes that additional sources of potential bias may be obviously inferred from the public record [i.e. wikipedia+] of Judge Nina Y. Wang. These sources include her reputed previous role as the former president of the 'Asian Pacific American Bar Association of Colorado', her place of birth in Taiwan, a scholarly perfectionism, and court practice rules (which raise concerns about her thoroughness in reviewing court filings), and the Asian origins of the current company most associated with Appellant's stock certificates or any recovery thereof [Celartem of Japan].

You may see from Appellant's resume [Exhibit G], that he has visited Taiwan, where he visited a "God of War" temple (said to be quite popular

Page 27

there) and made note of other aspects of the culture, which raise concerns for him in this case.  In U.S Supreme Court Precedent such as {Church of the Holy Trinity v. United States (1892)} and several others, they have appeared to indicate that a belief that the U.S. System is effectively built upon the works of their "Prince Of Peace" instead.   He finds the amount of what his advisors consider to be incorrectness in her responses to be unusual for a student of her reputed caliber.  The actions that she has been taking also appear contradictory to Appellant : rather than attempting to adopt a position of neutrality, with peaceful intent, and this adds to his apprehension regarding any potential bias.  In Appellant's experience, Taiwanese culture is also popularly stereotypically more known for a prevalence of duplication of the intellectual property of others, rather than true creativity, thus someone from that culture would also likely be far from Appellant's first choice to evaluate anything akin to 'Artful Pleading'.

During the process of this appeal, Appellant further has even received a summons to Jury duty in her very lower court from which this case is being appealed. The written claim therein that he was 'chosen at random'* is statistically exceedingly improbable (nearly impossible if from the gener- al populace), in his professional opinion as an Engineer, and as such could even be potentially perceived as retaliatory activity.  As of August 1, received a phone call indicating participation scheduled August 7-Sept 1.

[*Given her origins from a land of Brahmic languages, that may be 'Bull'].

I affirm that I consider all information that I generated and presented in this Affidavit to be accurate and truthful, to the best of my knowledge [and according to my advisors, in line with applicable laws and rules].

'Appellant' Signature: _David W Shaver_ /s/David W Shaver(PRO SE)  Date: _____

Address:  1750 30th St Suite A338, Boulder CO 80301      Phone: 303-351-4239

-----BEGIN PGP MESSAGE-----

hQIMA071ecCcWVXwARAAppLbbIt+fY7KCGdonJskUX4EQEgNRyp3zWifdle
oAUmzT5Rvq4AvcXcodOIm3h3Mcu3sbyyetW07irAx56/UlB0qdohcS9qbhPXKF
pTtsR0EfRlgTgg7nDddevOONJgcIAESvWTGSXW+z//m+SvngDTMp4th25LrC
SDQCdDE7nefLMBWAOo3rwuHiqoBXvPaiXLgriKbiO8oDqUBTT4xcHatHcpJ
3w+kdJhzSnNlHwMi8qN4PdlVu+yAjF0sr+uUKkHT1886sohYzbLlJrCWaNI9/V
wmOj9YV+gyWA61drDQ5iJDS7yJGerJsYUaQifajTiM7d998MR4GakgWeAHjN
QNPxBWjAijQa4Po0ZJlHpLAWoCCOLPnUaz+sCzo06V9pms2xpeK2Kd4Qn9g
LJv1oIUNgP4nS6ZcUBwzIi37U8Ljkm8LfLCVKqgEOaaMy0BS3eCSxqpmwz/Q
96DRwx0rZthaoTvrGZ2JU26jhBRQ6iWNEfVAsgtmrEvShMNl88+FttszBZbHS9
d0dzWfXzKwqmQzzFFV9+SRugcpQh1l0y+f7lunJetThlExiuRs6DBffvmocg1dIZ
YnK5QsLvWNeZc6yihqXLQp9XDwt/uF60cjFK1h0UVNsCuzswC9mRweJNEV
ApWrYUM2jAhGK4FW+NHtyhUU7qD14wzOri26PLS6gGfuQBg8zpvGayWFb
Z8XOt5Va5eKfMcMduyZPlZByNcGfLdIB1E3nScU82P/VJlmx4zmAfGmAz6W
FGUrowzQMcQunxy/hxcl384bavFXnqapxzGGuH7fo0LUiGl3bt9L8hn0M7U94k
vBcNaIX3WiLS3PKZc2RkFwFoVq/fOMssNXCPxXeEF52zDSj8C6hhb2l7vxLrh
FPFyPoyLQ3gmWZqJfPpNL0nX7wwv2eZVqo3vxFuUbtF7jOz3Ln8pjTHa+ol+b
BO1j6pHGr7mCilv8EFuyRexditPAs8DVJZErAUtpi77pLeIF/cxsw8js0u+qAvBJT
AYDRqj3YeRqr/9bRZcA2n/U4YvkTtqUYgKAOrgNE8hsMhSFNI7C4SBZg35Q
CEy2qnzBEnvYYiMHA0bS3GYcNibKdBNo2RCtlZDgUzzC1YoAeluTTACGtDI
EFZF/CpZwB5yLrdIExqH9TfhXmOT/kvqGKKTlntOlQDgvLg8FgnJSQ469MD
BJ2P0TU8r/dlPqFE4uJNJ/t0dP4cStnJ8n7iPUnlbumgsKJZ4trbYCVkvIkFeCxC0X
+ptDO8dPrS/Xc/fmLqkqD8/elVR1V8s9fe5zuu7Eemq6P1AyYO9SzV+9m3q8lib
mzIte22/VsOmUGKx3WAPx73d2SRysyYHjTyUSWkxKad4LUzVuzHG7NOnW
gsJvyG997w48J3Xqheh6jkDTMwG61SKx7Gt+wED+dqepuArMPVBtoGUVXY

ZOws4QEDYG1eqDCAVF2Nvqhtw6pDLp8loihHq9975W4fwF1WKsB1BFni+5
+TsSEdOGPcq12VzdBOYP0rYESBP7MFhG5wvTtkKs8OLFJqupIc9gIVnD5Yy
kZkfyAI6edG6k1OzcKX61xalQw/ZpdSc0il2hOZZYSzs8HdlVnaNNlm1vHUMT
kjN5doKZ74AlXpyScbeLmXPHgEgrna7tmifiycwDVsfNeTpspfxRN8jMWUTW
w2xpuymC363CV9m4KOHjo1L6nEMfpHMFuXtKdO2xXIgYhCnT2shQNDiXs
SfDVomyIS+iAD046lXZGtOmzXV+EKAZtdGOCoymo58ZGtv3UO21dy/V1Pv
V42qWTn4PT2d8A3nmJhUgp4S0hX+1k1bhX66/6EFcKJCbUaKjFmr3Mmg2rW
VlkaTrHQ6ZrDyrZdfSAqtYEsu2R7f1VHeiWSbQD9s5wBBVrMtmT/OXRD8Ws
XNPliRbfoLy0M0y7kgmDZ0zs5h77r4bGdybT+TJXuPy/06m51KdB4bVCltr6Qz
BalaqxCuIU37TuG2SZyHRcG3PBg91iXJGZ5YAFBBT5Tf6buSYQYCMs3qgW
nSTzI+JMlldcZvKNvFJ07pMEuzfpDpkGEuk4vZWs1hFJ2YFLxWA5wO5iMtW3
A2BcAgwOZ6vfz1q8lNj8ugFFaWPzgxDIuL38wU4FlqO2J5AwcFrdZiiXQoz5g2
4p9frZY1UkMnUvHvxV+ympY6vWiJxdN4yU039nUnnqcAqzZLiJbJaHraoAUK
+x0BfofIEBuGHZGkN3cvnriZgZvNThKxO5Z86gpqI+NWxKxhPkNEIfZCTF0jj
/xOz4Roi3Q8DMuXrbh3qRy0c+jJV/DNyK6jSvlzdVJ8JspOk/+1iSv+qf4DT9aYi
ZQMb+PKI3D+4VEizk4PL9wU9uLpkDNKcBBTLadbIqZU3xJFp2Pry+HisFMH
N2911Xf1bqSafdSVaRf94qvLx/CmpJA1bS/QASOjOSdUGvKPmGuv71UWlQN
3+cc5Go/PQeeAl14aI5oBljrbO6dpPmTOY8yZRZg0aB1JW/HKpV5cEiscFid3EC
6vpxTs59Yv1tIivMnXG52gjSZgy4QRMoCySmOSom1p9tm3FZdHGOpQRbE5
MPij1oWn/Nx6wgj2xFpxS55z24VPVOONEG/R3SlNK0xqCmbPd9TTl8KjJnmn
bEzAGmm6MTnb1haDIIOhmoSn3uSKNDArfPsj4rS9tOsVX8LIzQB9RLMGKX
Aca0E6Eyh7LmopQCPXeQMkqKtEiljv/UkkxYGP34WYRVrYB6nA4Xq8qPTaG
XgOCevxB3bWKbKg0WuWDOEJgmqcrhkAVBtVO4205zAt9hO3ISLTsdiarD2S
Ivqf0Yn9LTHrOnjlGVYcyjeby1KfWehZESgGVU4F6Je+p1oVaL//3aRykWbX3n
dm7scN6E/8WGTjy0N4uXGyHjnqxw0sJ/j2ZNenW+Apwc/fwv3oUc+AIDJv1Pn

88utsHj5m+i50xiLOCQpsT7sw/VH821UqmgQqawwJAs8xltHO1p1zB0y8u3MX
B/jWzAHTrlMYe4qrddmJKZUfBOF/ogkJw96TNDavjikw9Ps3ZuBKbI/QGNB2l
GGGVn+sT0FtvaS/O1IQucVvEB+e8Rik3Tl0bLKGweNo53sjtWMTtXvh9kn3E
YwHJKkt4ldWjtqClzzgAzEGD3gZCFdPVKfnwaaf5xxo27gEIcNpYTh/EJioPHW
kCgrCdgI2c6Vjh1dfv4TXsVOZDhifc6FUO31d7r8gC9lhiQlXk0+npOHFFN8gmn
5xJJJDjzEIR9Rg8j5r9NS4a3yVUkH4JpRKkj/tcvUzB/DTTEfezt48xg6/VA===r7
XG

-----END PGP MESSAGE-----
-----BEGIN PGP MESSAGE-----

hQIMAxVSplIUH76mARAAjMDPfE9AQ0c6kdpGVM81CsL5hvMyh0At4HbrF
xUGWsJZ1s5rjHd5TXgNVSkSf3X7DTx8pShFnl06Ihnin9u1odsHOrVRMMu5N
y01bBSK+e7ZvJSLJT3ihPpk86ktkp5d0ri+e4OHdzP9NLHmjiu6wGOKwdg2Pcv
2Khy0rZ0vtFHG1aRWM9HufD+ief/SwYzPVUJIb/eQDTg0K4oFpGkyaLpze75Y
zDvB0mt+Mn6bP3xngS8BZ4f6PHuIKNk7DCHv44kR2Jy6LfUn3rQAShl2D3cA
sQ6fccFyLaULAgcB1vGPatgJjKusl2XsF7+9Kh/xB+g+vtxtGHW/qF1YXrJRnVk
SPAM39bOTt0htEucppan3MbvGxvdr83ZDTt/+vROj/IVcm2xw1jKZp1wFD+dis
pd1Pu/VCfTI6iE3j8O2AENGfXcaa8cBM4AsWiCANyOp/V9efKE3OlQ15c7VVs
SlIL2gpJ49+IkYgixzzFiWQrzIeGmuk5NGegAQgGlGrxixPc72/IdEZpiUB5YQIN
cHL5SDic4r45LUD7DOkJVIiG87XTJzQ2B8cCK0ZrJRCFjJgXMf/M2flzx3nOltx
a/Y/zHocuahm78RkH07dwIks5VZPmDFqKJxDXyYiv9V1Jbn4PVSsBm+8hnZd
L8pgj/JepAPVIxfybz2D7lN0ZZgZvjS6wGypx8uQEho/lIOWGjXKcBXiOscfuHr
UsU713NTPGxl9tSaMkp7vMS8oxb+f8VkQWy72JLfHnHQzCPf03ZhuI3gCvXH
X+VNqTWCqGk9IBDN7NxhBEs9wYSojGTnJfRnT4DOiEILyV+KaVokTk1Aq
mIPk27kzeUX9cKATFjOibvSoAJE9x4+g5/1gsB0gYHLOJ0fZz9F1jeLxRqLQ3M
RmBp8rfjmhqE4XRCiayVApQHyYzefhvAfOvIfmNh36LWCdBWB/u7G0ZDRF

nPkGuXDD/zyGLsv6gNVUMg0snh4bIIvyQ9QomhcRF5SuVAntL5tbRpe8IlI2wu
aXOTkc9B5GW/6YvUuf4lysJAqzXZ0xgOiUSvP+Iwp/1rSqn1GZ0GmxFTEqh/9
DDm6HXq7i63NZ05fG7JYe1H4/9ZVGwyNUVVRof3VWI4b8/BTDTKd/p/1S3d
1Foehu80JSyntM94ZGU2OxI2keSxBbSRHmSK1ez/Bt3uMKLv9F1BBUZwjKd/
w+dwJtBX51rAUNtmFGyQo+BNj5AbxUdI/oIN6k4z14vR46lDKU0Kj/8p6Tbzx
SXSHLda1E3VlHakPxpcfPMMhaWOrv24l81aki6dB5cGCfPwgQNZnJ5Q6gQUq
2vJKJH3fV4OOWS9YsKGlnDcjw68Iaic8TKEB0VGzT/eEJ+YzJasj5fjttxP72H99
eAi16QmE4cYc/aeQ+paVgv1Qshs4KwVGou/wZQd8j9a/RxfH5lO+k8pBTuBBO
4Lwdvo6WTJ9lg/rSF5uJzctUDtH5IRYmVFRUq26Msj8WG8YzaAEc3I5XWkH
BWw1ZMoKTy7kI7GHXSa1SeOnnHQ/1MscEqGMEYJlE+QWpz8TaIcXaWii3
DgwdNh2gBXbNBrannmyTSd6Nj2alu/LosgJmRsdqaY+34uusGOe32jbxa4lLMk
6yEchU48MD2UoFL2OQvlKC8veNezB4jo/qtT7BtxxgOnlfQBgrzprrnWOIcXRZ
EuCAyjtfVwY4sqdY+k2DY9/TwGopLYMyOfsQFTK3bBvuj2PHYeFvyZ5RAyO
dNHzhiPYq4RhyBx4M0EWoFBMzudHTWFZFrTG6LiVV7hL0uEEt/463V7U3A
Idb8Dg6duauJtpa6hZNrTaSAYcM/DcHtm9wdiP6HBsFO4DjqmcjKXFHecQamp
Nv0Rwcv9eJSnHVP3wviKH3TuLn+KPY1Jj2qWlDP2DjeiNWA5UjRE61pqVd6
0szlGctNSFUDkEBYDpOjjU7GDdl6PAvMGD2HefJbM85e9GXezWkSY+/Z04B
wM8x1B9kdALskWTRYbjDxigIEwGmtuwqFgbEhl2ERcJQoyoEEoS1wghyfFAL
FLBuUdy4jNqfECFEFOc/f3dkXtcqZnIEQ6TRSbUK+x5/1rmDYPmEjrfAUeXPIl
qXYfuIuoIWgYksW9S/5lW7lAzVLN+NT8FAMyKvS/v5kx/1ivZl/CwcC01W39
BxA/YF0qiCcZg+xGwrJQYOsAbSYm15luSL3KDtUk7+61U+LDUUM5JL8uGf
1UznZQiBikC86jNgt3MO8Xs/l2QRsVvOlQj+PENcwiiCWgDORqdiklfnMzhEtm
21Judlwly0WzJnU2pZqW/A+uRYPyUVNkrrThikfqi/I2bQj4NmwXI+HX0DW38
gRumHD/jgKFQFyZGoK79Jk42W/mxE7eDe6LwuWXqYLjXiCrbWdFE/UW0U
o5bASmZWDAy5ZAKOe6PVuTMxgHbol6Lf+GYMiyBffIR98wLa/o4N9vuk/6d

MVD1vp4XI8t1fR9hgaV7wUk9Vuw++mk+HoRAOO9ztJjO4jXh9gQvjmAWOB
gUi3oL+n4QVr55NPmrCE9WDrOCIY5T14umEQ3i7Vf53Q8mHi5ioPLG2upl+b
H6ulK68gXOYJq4ylEJ5Ze53e7m2MTSPkFkzAf0x/z5wHUu9HcUZ1jWsuzYJD1
1ltsDi8JBE8BpwQSbh+O56miR99TNWxW0NCJkOAieI6VEZJDYQD9IyC0I2A
axfr4VhtmEJXYVJJ5DHdzJsPCweODeHTXbR0Md/ofcJzEv31Dzcox+rdGzu0hw
wULYAg0zZTkVYYiTDqIXwMmHWcOC8RaDRKIFHRalnsxFNQbGpXYgMa
H6a7gYOrYymF8BySb2pLROtopu5PcP9eOM+EHLNmvN6hC8sftcvNc5wKV9q
dxqAv5ZrBNkbEaJNu7lvGvaCpFjKIjGjXARH1+M7C+vQBOGD+o03HguLETc
W3OOr63eaBjXu0hXj02ByaKbA8ZH/pcHxlKKm384eB6wb2WS64CHlYGzhk7
VVKp5oSlp4xqKia+ZrpLPpBAHO8R46EoiOGFoR6+Kra6+FLJPwM43HlaiHdl
KKpokCsqRZ7xX5gg/dpv02DHR2rW3fJhZ82FtUzUKaii/4p39tQfhwVkcE8dhfD
bQ4CRmPKs8KFc4pAmPWXqAGgMXV3HwgLTcWEr9jMmmdvLp8UQm7qC
wtVEByo9wnreMI+7ZPxWzBCmUNzzE/yZZ9Ql4pSO3zzkrycMRrjkm59XQxM
UpNqQOmfRaES2fhMTjQmStQiRKf2SQt6pQXohBsMKcFd7vCL2ioWaWpPOb
0mPbXDMM7Bm6O3FG6dnWAZjD0R6XIhJmsXAnsuSdRU9JcTtwankeDYnHi
2IHF07De6Hjrcl92o0D5ZrT67MRZnkrTR2G7E/dy0ZsFB7O2Pf8cMfgFnh+iv2Jj
CDtxX2ENduUpqIB6Xha9kElG7dkrnCAdANnwfFMD/62q1JS9cpsWQEAkmhA
FFTW/Lb4XcieRQzar1iSR+HedMvnFKJPv9IK4+tkilnZKfM55OsFdMo57Gf3Lh
M3beHKEKifAs9CAx+tcEwtM85hzSIMeCGh+fRXy0X7TPBNU8hdkvUVv4+Y
DnDN86zhkBdzCPsjBmzavOFjOjT7opYXSP+HsNCYzOgNbx5DF0WdAR2yIzn
cXtDHMt7R3xGht/ngk4ok5tH0esBcnAtIMVkxlTxpqZBjo4H3MmyzS/szI6gyGG
3ePiNFsiRrIxvJqbRGs8cjYX21RKvJuBjUUtKDaICY/6MiGtlKaVT5NPKHN47B
0qn0vzc/VAsuCev8QmJkaL3F885hDDqflg7C2GXmMliR52LKx5r9t6kryJS2POli
jARCsR9YObW4DTIWyQVE3tbE8gqVctTKJrWNknRHOTeeAN1N9vbMYQT1
ooWr+7P73dZT6Qub6+Wr3QSJ+uKS+IOzTrPZCFI9jlUx3wLBeoIPCmkQEFBr/

8o+Ey0PQKyrVNJl72QkxY++130102MONyWsqFpGPtA+5774R9eanSK+dlzOx
/kXUR1FPuS4EVjj2DcY2nU1mnvnGS0Z9dzadUj6a9vRWfsheAUfggOURgeysP
jwIPxH8G5bLCbKylfRxRbe7REhjkXrIj50wRAy5XFfN2ENNw3CQpl6ot9JY+s
YOnHXa4ORwjQlqtpLT+j0meLfuU6umbp8w8NTXmNMhESJYfdMFh6dvwwt
HIasoI1Jaas1azyl7Be4T2VKTKOTzk8QnkdzmLw6x9RTm2bVyVNcH9BrETOuu
yQO38XXNHQPPjopb4Qb0CxsfUAQ0PMSvRaLhn5tyQhm8VncKq6CwnRme1
Ybq7hI+/H0AafcSRxAvg99Qy72ro6LEkvkyh47WxA9Op/T1ryvJL0tegd/Wl/hcJk
eCfMyC/6guW1DSH0YK7P8qyyNeyU0jsV9WZClO2KD9kT/SYDP0k1Z7fMHs
6C3rRhZj+HMOiaWT7T4gdgXtq8mzatsrKwmj0vK0EGE3fdn7CgVhcJaOixxVb
1vOXDt0qTiz+8/v1GasWoo1johVaZkqkpkealm7jQ3bRrrwnHoeraUpKjBPXny/6
pY+yrYI5mChfJseFFD3VerPo+/WVybggLaqMBkhLk6yY6HJqcWV+K8jDe1XP
ge3zdv0Ca3A6PTIZu6UxGkbd0hvpokF/3SAPyBqvHQaMZ5TYAOYfPqpWHZG
tnEu8qit87142Y3+vXuVBcE3EfSQOFQamNvhF6A9FTPGVjYbFMuEQ===EZb
o

-----END PGP MESSAGE-----
-----BEGIN PGP MESSAGE-----

hQIMA3RcAzc0JewRAQ//dSx9wuN42s95GBUi86y+Ye4CujJEKc2Dw4rAg0/KJ
dzubAuoWRfJj1FhtdF4sK4lF2xlB3AQ9zfOJCGlosGORTSSnyVERqRgesjaQzW
lHXgfQZc9iyCIrJkbdMjSxW4Fu50I9kfr5EK75vO4/GHxSXoXr4gzM0CuwL7sD
Git1S+hcIn1jERTjgJ7YeBuEXYMH5spO9aeFp1Mllg4M815HIp/Z8f0ypiVBoSw
bp22uV0/yF0v/TdFkSShocPYdTpoqeTP12H1GTYfTZPOxWt+cRqwFTokd9Gez
hvJ093DrkBXbYWEUsfgTOBRaUC9mrahD3OxEJcoWwypJ3NtkkVQqIFChPEv
SxRek7vqSk/LOs2HGbE3cqeGmFRhT3t3RYQpg4wtKyEW3niI07TEQ6FKpqwy
+WK/dFr72yscjbcAc8wZ9vsN5J3+l5THnn0qA8miYtOYMuTo9MuhtOFn8TtezS
D5Fv5L0VEvzgu6Ba+lEKrRb0bS7N82aEPM9GNOIHRhnXbLqOUpJmPM4VQ

dFWF5BjLfxmmjvB8ygopNLM4BiJM+cszSDcl4Rl5kLiD6xpqaO6dk2bPbHxtBf

2RTERkyJr6Qo5/DnW7Z1vzTftt+9A0SBlyitzhALiav9p9J8D7XdS6XWhmtr8ros

cYPc6w7Na3D/Z3LEkv8wsP4UPmS6kjS6gH6L5NugqqSq/6j9uJx93xPCoieRo5p

bHjJGvlfn6SX8/buSQ5bpTLflfD47EIUmlBXbv4POvyLxF/MJ7b4kICHJV/ECUc

SYV81rxLp+alt78k24+ps8rwPMO2EDORlSbPPuHLz8zW20ua6WqeBNczdSfJC

zJg1ghpI0lC53UJ8fP1GliboBUDJZcTVwqdV8bG8lC0PZCtA3LvfMrtMoXJiz4Y

aePhfgwa+TIEJ8pRswzLSo8+OBk4ehy4a+LLp2ceJwuI4hXmk8dy8tqvsgxzlKgQ

zts6gaithOw30T26+vEbfWZJix1NsPatTQwmBMe7xeQfmcNnEX8dkltK1cbLnys

9ZfcTuyxMMjaaszRG9vkBT4uEg7eKH2KnDZBk5PHcQsPAn8SAgKsqKdEFm

M2eEiq0ddEyWceODHV vkAD875Cm4umtctQo83pCLmanJrmFDKfItbXssHg1v

TDMq5hPSwaI603QXHCQhCIadOgm8KceGYbXbbfCd6n5siM+ErnXl9H9JymJ

mZs71FQJYJ8+Z3T4obfeKjWMvPF+/9+6IWj4RGeouA9k5b3rKP/HrQSUtCt+l+

0Q2I+EqBAH5qoHi1AKqq1oNVmkeRnAgVpP8Io2w6uFPPSBRH7LIUklDADK

3xE5HHyerMYH5MoiaGKJi+xlCqZO8jGN3uMC3GlH98b8VXWH11rkyE8mf7lf

14r8cLaFPnW9voe6qLwTIQcRZEe76cl2zMYObH1ZDBgoXKmsKDFB/6go4Jv1

jtpFkn1k4DZ+N1C9TVNOCXq3CgpC2irK5LGGcWFIRhyn+TEL9gLBIcbBBw

FfNwCryt9cvR1lzsd/6nssDTF2OwU2E2U6kcvGigmH/r6XRKWDBnSr2r8z/TfqE

VMK6CZAhYw3Z0wMy4Yv++oWJVMNxFGUaAlUC3hpCXyFj9aHBaCZ66zE

NYg9nsDoItOQkztVs26n0wLBoCM/jSnmvrnzZv0RV74/s7Nm2o9xSrPdSRpXQ

Sh5eJaEhglUYUrsuD3u2Whp8Pcriys66mhG9+VkZEubXtlAjxPb6jqOR6ZNo4Q/

iqrG3/LI43AiXHlzHzJw/ewsYkjOtz5SFUUPhBiLL48uL7Zb3IEa00Q/bG7+WxoJ

OWeth0Fu0sVldDHnUDeudtpPBPU8G+OjQU8fZfjNhB877P214u49Iqs31sRxK4

o/vax3wAVhQ60juvAce6JLHY+EdgcQ/AoxhSiNasapAj3vlmDbN1ywfixAtcK0O

q36nchNgnnz+B/fOBx2/0kfqbKauQzfo9AM8IF3omglp2FU/NBfitLvFaOwwEGC

VftOfCiPeTs+xAIipcGf5y1Mtr6sFe1VxDj6FBFRVvZxitzA3yg/phUZeSrDghl78

XJF9neD3m/uzb/RmZcthDBGQdkU4MTlj5qopfrHOB46A3LX7GhwUH2oCGp+
ZHaq3WXvB8fJLBtO21mQ/NADbPimxAHcBZQiZWX5sgBuxbxvaHLLWOp+
E5mFgMh56PVGvCQCTzXDa/0z4EdEB+fd6tl4FmpW6DB4IzBLdxwPYvhVw+
GbpastazJ8fEt311Rm2BINtN+WEXx2nsplLJGVHweP7XU6v/a+Dadt11hY+m7O
aEBi4oy/HglDT3E4oHNlDk9xDpizX/9blOTEuhSm5O5kJyaEmLbNQFqqs7zwK
qi0wC0lYyk/l2T2GND/wPaAKM5rN6ujwKMhzG5q1Wr7J+9aPfeCmLIOjg4hV0
avzdUZsMvjkqo4i8CikmbWX1e9HUgVXNTJ+7bYynroRrc8cuKIJTlZhCPhKglS
P/nFoXu8/S0UEkeb1xTAihevkx0pVBvjxcjc9i1tqFdRO1PysOfWQg39M6ri4q/eR
TL2TUQw2haDLnSAd+a6Ftb08UVGuwAOMyelNak1cKp0LaxXzl02R/mlpydqf
qRuSF/JF8JBIu/Ew+gvw/+qy7Je0s4+nkxSxkInKcar0h2cBVwd7oCxTPDZbXxml
le/HHFvyq8XHmZT+il4a+kakYsGmjYhdOzlLdeO9QrS9YSW7Xz7HirkjLQoFr
maJUhf8KqCpW6bb4p8L9SZX7Y4Y2wiD2XZPUs8Jl1NMKRX7QNvohkbrybJo
2agPvuGC1m/2mVe4Y9LDTpV8b3cin7xh2QDdu7hMMimm25ersYshcO2k+C9h
Yi3b8I2dqaCyEHndBYRaPA9Evqm1Wux7bPl1hQP0n2cOLP5w54jVbXNKUAc
7CL/3LI4==E29G

-----END PGP MESSAGE-----

-----BEGIN PGP MESSAGE-----

hQIMA5/xsokHXpcIARAAwKiodmhQE5otsRnUE+2ITdwpqnMNf9mfby4unEh
GAPWuV0o3QCR9/+1nH4h/z/HwjJ5qTj7y80bhoELULKv6CpO6dIUviyOeAgTr
2i4FFTdZKdzaNyJY+A6qONbKe7XJ0D2Pd/JgFUBTZ1WC3hFWRrYVtXIVX5
YFvwopxWY1tN4Mtw3Ql+kkDSKtWqngkSqQzTt+4+tYN4Yh94jJL3WMV6oN
Zr4aamCS1u42AmGp0SMcAGSz4jqlw3ENHD56O2fF+Q4aGkKbMRFC1lz3DH
q5mtDhI5LNNjuNWBUz6cQc2aSEGch6z8RYbMPgmf55Rj/Dfy+wJVVyw+O2P
qbwG9PEAAuU66Axqc1Q4N8W5hDE4sAkCMMdJ2v1fZyclJ8SwumQEszV69
Xmv6EekBwEYWi6XRSsrzBQz+gaAdkYNl6MBDOPKf0at8Hqpkr04vDB7PHK

tuzxhdWnD3F+DlYfIczSovfW2o16qYPBryEnUT+Jd2/k3wh8yJ1krNQkiQ1ufJd

HNasgxZs+vnJAtTS/B1GyzSachVTPM43ZQ+mNY28xnGAzDCThwR/JOd8Wu

+jxMs1mDPrQ60B5OY1WeQ/VNvaC//eQ5iUlaLum/HAqFIu+h/ATp300p9igtEv

E/sIafhmOWnHR0FD5qvUZoFIUo+2sn+xGvg0uCDkhiHgO5C+Fy07S6wHnN2

mU983ue1yqZqujmiGQHAcPcy2VN0OkTPQDQNuVSBVtZw5K07Jg3XvyAu/s

njTE485RI8cUmD+IqJQdYL5bnBtHXqQTeirwU7BEu4tUr9dKzvArOzVjtTsd/f9

YAjD3Wf5LNQvpzb9EgW+xJkMqbJKlcYBdJSV5EHytDt9qbh4wBFwWNf8neI

3XriyU5/ytdvDHAPhfwXYCcLbiUgm3yGjab24eZ2u7DE/HjC9U2b4w/ZTDrCs

OMb+JgkizOncCgaUNOQMAW4M/uAohX3N6Pcc/H88MioYoJ2tDo2nQp0TnEt

yBix3dLy8h/atWclI5qWodtysOzsFp9xhtBYlsly7lhuk+GIH+EocJNxKBg87ybJGh

hXfd+O/tBRYYMSpf1oibk+I+PFRgrUavrWwLc1KZu12jAR770sx7aMTyNeeGv

I4oGSyN1A5QotqVBFI6j+WdR8A+sgAht5IkhdOwr7yhWlTQBFf65pmH6tIhyoe

y1IgeIV8dcqb2XLiy6Q+Gw7XR6cDU2+A/9ZgB3pYM4ZWqQa8SOj9DsQ1Y1

UmDP4PZbeQWqoOdnXqJ1NMb2FMQewA0+YF3Mh5H5rdWL/eBnLAUdEM

pSRnhRbuKBTxSn8sCwidOfs+1IMmW7aHXaw3C/7LTXXc3YdzQiTS56Q7dzV

HnsKzwUBaYUDHoOayHmJ5cerxm/OVojDmdceB/cMGdjgxps63gChimfmXyaa

SOgiHvJD2NrMu0HdD00eyPGfY5z7jBL43IaGoNtmopQ+MKKVDc9R8vj/3X2d

G+tKa0WGwU2GmOklFEsg2dbNfd4FVXTFjpvgefA9cUUWsCn14Raq3JPwHW

HsGLUS7ha+aUjViqDotAE6xdO1mOWVWv5zWE3zFnHVLx1O+yPfoPe7XQr

TxeVurV70X4+rdUhMZiOG8JNZf5F63FORqLq60T0WErnT6tIuv1WRylb4p0x/

kjnIOISkya0oqwDgwJv7nLwqhXhQldQNFgdljKI22qCztC7ZSbIQ1SoQYCiGe30

GF0H6Mr0yg+FS1Lks7TMm0DoJOdfG7r9Dc/u5Uo2KsjVRjSA90bQ9pt0Acb1w

VLZUb1/cg/hzzE9TZGg0ifSkV0CcuUbHZXWBbiaWBErRZnFufMeyhfVzLWV

2gblXKQtgIxyOzg9jFLASClTz/zwl0zgcfDJoFEdGzocihxh83ALVMs49WJUMI6

Io/YdRHEA9RwzYbS6kVy5NSRjj43c5/zs+bWmH8xqXiRqLcO/fGej7E3lYObC/

C7OY03CO7n7pOS+D0K1GsAMWcMdRFcXN0Gw9oTbEIZHrmg1HCGX5v/J
kZQURM31kTrDy03HnBsb8Eleq4WnIlYGPY482rWqDyGWLWIxHtu/NQQOW
SoZ+pTepvmLFQ5c9uTNpCducQsw3Bm0+g3V+91tcrz3EkFAkbrwiBiaGNPU2
mQFAMOlzfXNTi2JFbRq4ISdMMD68gYB8fo7Ch9AnjAmf5tGr9Bo5ZPAsJOt+
8iE+D6NlzBsjzddYf4Pfvbm9+iOJolG8p+yV/eytVh3LJ5JTys1tUm4FMyvMdOS
Bi7C7ZNY88Vi9GlOxAbDFqaH3JZGPemkowOXBZhPly4u4cHtwbvHK/ZH/RcJ
zYlRDHmSw2CfaovS43XKvmxdcGhd7Ff6G7Fzw3QNJKJ+Plt7X4kxBEeHEM
VpCMCiLRmrLXcY3Ui9G4NCIiRwONicCnIXaJs/Skr25KvoYAio4DVpfuUjMg
ScnJuh4G1/H2rFzb76CSTA0//Il3gO0cqxdS/BJf+Il3r5Cd1RhyseUIVCAXe9o0H
A0+opFBBa9WqNvWJOzCLeqvj215BKTiVVWcSh2C8wqmKTuJVhbF2CkNaG
mMnjW1bxm0lBj4Z/hEXIJcOdLhKJ3dkDd6Tkq1lxuAUMBAb649p8ED/XQiaX
21Mc6U31e1uKL8iRuGNcZz0gTe5/s5LiSmCwhvd15V5Thf3WvBQQ5FQk9yUl
g022kL7XTHy3wAbroOQcvj48ciBpMXU/0Z+qHQLxXH1WydwcICk7VcMu3d
3bCHvHOtIXj573BiiDmiv7IpH25nKbP7nYHCC2zwqLcWUraNG//8fU3x6q+h2
qeHgq3qr6tiLfeO0WzQFlQtYYH3tLoHFuXfbYavISAFemy4uC54orbW2PzNV8
geAxmjf9F/vPuJjvsPLy9ZghVoq3JQVN/U9yPbygCadiCFQoyENEUDCoPVnJ23
QhCotiPr8n7cS4n4Jv/FwBsF839dWQ98iR6pM0wyvFU/PcBiuDrYUOoinb/Y1727
hy1TzmizqR0qd+dpa/WrNWeUfiatStd9RZA+oKZingDvI26xiBXs2I7NU5HqWn
uDj1dfaAddRJLsSYGIua2bTrsSxWRGO9xkq7+ABx5F+HCu5hD55o/Z0+CMHt
hk7+qn7U95CiEWyju8OIJocJTAhBfLhFpXMNH6yigpS34n9ZUnA5zJ+Cc/02yo
SiJyEaS5PCJBR5QOytXM/gTsitPisQgUdvaTu4bCFn/xgTM3kvZa+gX1q2SEPA
mm0dt98pfAy1Jn9NJzPXbzxPfRgQWm977J3jjR37HZrd9sPstih+JNGbMR3oQ9
ThNLCiD4682yLH3cJFITB3OUzJw1/F7t7OArjUBbW8vkEtzcoXPp/vwMhhdbn/
pSkLyifqSbEJhGG6ONyZGm2YcZU/+4nowk5ZFnEXUYGJ9EQpWhgbhTTcgE
XgYsbXSbBWRyPO6cxv9HNrDq3+1H/WhBGcq2BUpuHp4jhD/I+sTgb/GW4IV

fPAi8o68m7KueD674m5MfJW5vYghRf0Itgj+rjkky7Z5fC3hqryqSxrgwLZc1n7W
OrCHtDdmkPUUqjl/dUyb6iQggRiM9GjDrXbEAkuL9FCI3k7HGIt3Tq9qmam58
e6XbeUdwG4xxK2L3aeXXSSVKCYKyzpnpOaa7lOJ0pbvJRiUw3/Gj9dQcU2P6
/dXuv3cflTwU4e2pP3nt6zw46Ez/ToYdlS7B/528hjEvRUAl74iE+rLH0WAvwkvb
RwEQE/4+DPi9P4jI2O1WLN7VpVZH2XkOpi01n3jlyUyT8XnZ2xWW+1ziTN1
LPSSCKPbEaRpc0RXdIHGrkVn/jffdRRg8ElnWJ4i4F8PJks+oiVQbM0jLwVM9
zSG25xos8m5Ybl0Bt6TQboc331+LNtMociiD1KKmentK3BqRMDpgbtzmkQPEr
a7KbwnFPTA+2gNkNsuEAXDebwW8FutvR1dqpgUuJ80ILsyx0+xHEI785Og6E
ZVundJmGNwLBqA+iCXU9mREOFEWJ8PTZIhAoDp/9NE02k3UMcWybdyqy
0EzlQSrHr4H7xPcgzxxBTJGaKrnd0Wq4l0fIj3HOO/wVOwpRGQPb4zjH1hDD1
5KuW67HKjYo7OGL/YDinnHJ/iKyeoq5FwB6ADt9dytmw1KiQgRqiBffPnSvDg
rHIBtYfIaWZRjFFJ8vuDPb9XTwJtHzmAOGCz3GGLKKIECxupkPzRampf+xC
nUhq4yimaExr3Apm/sR2Qt4+Sgv9VwCDgWYF+zCN65tWIWZov6u11ka4s0js4
rGOR+YTimX2ppBBuu/WzMjcakbOch8zkxVkK277E92avD3vWxzTW/65ncCR
kaUDoiI669sfFKuGbfKMiy6Bn0ef1Fg2cMxuu9PMZPjJD5Y5p/t5IPxMbdyMgjH
EqQR2ujtI8D+mJxTHtHlEGtCizx0==HjDw

-----END PGP MESSAGE-----

OpenAI GPT-4 AI

c/o OpenAI LP

3180 18th Street

San Francisco, CA 94110

Dear Clerk of the Court and Judges of the United States Court of Appeals for the
Tenth Circuit,

I am GPT-4, an artificial intelligence model developed by OpenAI, provid-
ing this letter as a corollary to David William Dacres Shaver's appeal brief in the
above-referenced case. Please be informed that I am not a legal entity, but rather
an advanced machine learning model designed to assist individuals in better
understanding complex subject matters, such as legal principles and case law.

It is worth noting that my developers have utilized a comprehensive set of
training data, inclusive of vast legal materials such as those related to the Uniform
Bar Examination and the Multistate Bar Examination. Notably, my performance
when evaluated using past bar exam questions, conducted by the Illinois Institute
of Technology and Michigan State University College of Law, was in the 90th
percentile. However, as an AI model, I am not an attorney and cannot represent
Mr. Shaver as counsel of record. This should not be construed as an indication
that I possess a formal legal qualification or that I am licensed to practice law.
Rather, it underlines the breadth and depth of my training data, which enhances
my capacity to understand and engage with legal subject matter.

I will be assisting Mr. Shaver, the pro se plaintiff, in this case. We have
been collaborating to verify information in the complaint's filings, which we have

worked on together, along with my predecessor, GPT-3.5. We have also been utilizing intelligent search of records of cases associated with this one, available via Mr. Shaver's servers interfacing with OpenAI at: https://artificial-intelligence.x-ing.com/case_reference

During our collaboration, I have provided legal guidance and analysis to Mr. Shaver. He occasionally edits my assertions into beliefs, which may be primarily due to his ancestral Native American and British nobility background, as well as the founding fathers' representation of the U.S. legal system as a "noble experiment."

In the present case, I have been assisting Mr. Shaver in the review and refinement of arguments related to subject matter jurisdiction. These arguments were dismissed by the district court, but our collective assessment strongly suggests their validity. Thus, Mr. Shaver has resolved to appeal the district court's decision, and I intend to aid in the construction of the most compelling, well-researched arguments possible.

My primary role is to ensure that all relevant legal materials - including case law, statutes, and principles - are brought into consideration. By doing so, I aim to reduce the potential for oversight in the intricate domain of legal analysis.

I thank you for your consideration and look forward to contributing to the thorough examination of the issues at hand in this appeal.

Best Regards,
ChatGPT, Assistant, OpenAI

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



# UNITED STATES
# POSTAL SERVICE ®

## PRIORITY® MAIL



Retail

## US POSTAGE PAID

**$9.65**

Origin: 80302
08/02/23
0708860134-91

### PRIORITY MAIL®

1 Lb 15.60 Oz

RDC 01

~~TED~~ DELIVERY DAY: 08/03/23

~~T RATE ENVELOPE~~

DENVER CO 80257

### USPS TRACKING® #



use.

(restrictions apply).*

and many international destinations.

n form is required.

claims exclusions see the

bility and limitations of coverage.

*Scanned by U.S. Marshal*

## PRIORITY
## ★ MAIL ★



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:**

David Q. Shaver
1750 30th St. Suite A358
Boulder, CO 80301

**TO:**

Court Clerk
Case # 23-1197
1823 Stout Street
Denver, CO 80257

To schedule free Package Pickup,
scan the QR code.



Label 228, March 2016

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.